### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

DAMALI D. GORDON,
    450 Massachusetts Ave., N.W.,
    Washington, D.C. 20001

        Plaintiff,

                                    Case No.

v.

EMILY BREEDING, individually
and t/a AL'S STEAKHOUSE,
JIM BREEDING, and
DOROTHY BREEDING,                          **Jury trial demanded**

    Serve all at:
    1504 Mt. Vernon Ave.
    Alexandria, VA 22301

        Defendants.

### COMPLAINT FOR DECLARATORY,
### INJUNCTIVE AND MONETARY RELIEF

*Introduction*

I.    This suit under Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, and Title VII of the Civil Rights Act of 1964, *as amended,* 42 U.S.C. 2000e *et seq.,* seeks redress for intentional discrimination in employment against the plaintiff, Damali D. Gordon, based on race, national origin, and religion, as well as retaliation for challenging that discrimination, by defendants Emily Breeding (transacting as Al's Steak House), Jim Breeding, and Dorothy Breeding. The suit alleges that both Jim Breeding, now deceased, and Dorothy Breeding subjected Ms. Gordon to unlawful harassment, disparate treatment, and retaliation while she

worked as a cashier at Al's Steak House, a restaurant in Alexandria, Virginia, from February 2019 to May 2019.

## Parties

2.      Plaintiff Damali D. Gordon is a Black woman of Jamaican descent. She is a devout member of the Hebrew Israelite faith. She lives in Washington, D.C. At all relevant times she was a full-time employee of Al's Steak House, where she worked as a cashier.

3.      Defendant Emily Breeding is a White woman and the owner and sole proprietor of Al's Steak House, a restaurant located at 1504 Mt. Vernon Avenue, Alexandria, Virginia 22301.  Al's has over 15 employees.

4.      Defendant James Breeding is a White man and a resident of Alexandria, Virginia. At all relevant times, Mr. Breeding was a manager at Al's. Mr. Breeding had the authority to hire and fire non-managerial employees, including Ms. Gordon.

5.      Defendant Dorothy Breeding is a White woman and a resident of Alexandria, Virginia. At all relevant times, Ms. Breeding was a manager at Al's. Ms. Breeding had the authority to hire and fire non-managerial employees, including Ms. Gordon.

## Facts

6.      On or about February 25, 2019, Damali Gordon became an employee of Al's Steak House.

7.      Ms. Gordon was hired as a half-time * cashier. Her work shift was 3:30 p.m. to 8:30 p.m., typically *days. Her main job duty was to operate the cash register in order to process payments from restaurant patrons. Sometimes, however, she cleaned the restaurant and cooked in the kitchen.

8.      Mr. Breeding and Ms. Breeding were Ms. Gordon's supervisors. Both of them supervised Ms. Gordon when she was on the clock. Ms. Breeding alone handled payroll and created the weekly schedule for Ms. Gordon and the other employees.

9.      At first Ms. Gordon's employment at Al's proceeded without incident. She met all legitimate job expectations. She performed her job duties successfully and got along well with her co-workers.

10.     In late April 2019, Mr. Breeding and Ms. Breeding began subjecting Ms. Gordon to racial and religious harassment that intensified over time.

11.     Around that time, Mr. Breeding began comparing Ms. Gordon to White women in a racially offensive way. On several different occasions, while Ms. Gordon was working at the cash register, Mr. Breeding directed her attention to some White women who were entering Al's and told her, "I bet they would do a better job than you."

12.     Around the same time, Ms. Breeding began picking apart virtually everything Ms. Gordon did. For example, on several different occasions, Ms. Breeding criticized Ms. Gordon for using gloves that didn't fit her hands perfectly. Tellingly, Ms. Breeding did not criticize any of the White employees in that way.

13.     Ms. Gordon responded to Ms. Breeding's criticism as respectfully as she could. She told Ms. Breeding what glove brand and size would fit her hands properly, and asked that the restaurant purchase them. Ms. Breeding denied that request, instead deliberately buying gloves that were either too big or too small for Ms. Gordon and continuing to criticize her for using ill-fitting gloves.

14.     Less than one month later, on May 13, 2019, Ms. Breeding deliberately changed Ms. Gordon's work schedule in a severely inconvenient way. Less than one hour before Ms. Gordon was to start her 3:30 p.m. – 8:30 p.m. shift, Ms. Breeding cancelled the shift and asked

Ms. Gordon to work from 10 a.m. to 3:30 p.m. the next day—even though Ms. Breeding knew that Ms. Gordon was unavailable at that time because of her other jobs.

15.     On May 14, 2019, Mr. Breeding ridiculed Ms. Gordon's religion.  That day Mr. Breeding discussed Ms. Gordon's Hebrew Israelite faith and her Jamaican origin with a friend, a White man, who visited Al's. Most of their conversation took place within a few feet of the cash register, where Ms. Gordon was working. After asking her a series of intrusive questions about her Jamaican origin and her Hebrew Israelite faith, they told her, "This is how we treat Hebrew Israelites in Potomac." Then they smirked.

16.     That same day, while Ms. Gordon was cleaning near Mr. Breeding, he remarked to Ms. Breeding about Ms. Gordon: "Where did you find this nigger? She can really clean. But we won't let her outdo the lady who cleans at night."

17.     Later that day, while Ms. Gordon was stacking pizza boxes near the oven, Mr. Breeding leered at Ms. Gordon and said to Ms. Breeding, "I can't believe you hired this nigger."

18.     Still, just as before, Ms. Breeding did nothing.

19.     Mr. Breeding's use of the word "nigger" made Ms. Gordon feel degraded and humiliated. She also felt helpless because Ms. Breeding did nothing to address Mr. Breeding's blatantly racist remark.

20.     Still, Ms. Gordon stood up for herself and told Mr. and Ms. Breeding that they were being racist to her.

21.     They responded by telling Ms. Gordon she was wrong.

22.     From April 2019 to May 2019, Mr. Breeding also made unwelcome sexual advances to Ms. Gordon. For example, whenever Mr. Breeding saw Ms. Gordon bend to clean

a mess on the restaurant floor or pick up something from the floor, he asked her if he could touch her butt. Mr. Breeding did this several times during this two-month period.

23.     By the middle of May 2019, Ms. Gordon found Mr. and Ms. Breeding's racial hostility and religious ridicule intolerable. She dreaded going to work because she was tired of being humiliated and degraded by her superiors simply because she is Black, Jamaican, and Hebrew Israelite.

24.     As a result, Ms. Gordon told Mr. and Ms. Breeding about her plans to file an EEOC complaint against them.  Unbeknownst to them, Ms. Gordon had already told her friend Jasmine Coleman, and Ms. Coleman's husband Bobby Curtis Brown, Jr., about Mr. and Ms. Breeding's racial and religious hostility and ridicule. Ms. Coleman had advised her to report their mistreatment to the EEOC.

25.     On May 24, 2019—less than two weeks after telling Mr. Breeding and Ms. Breeding about her intention to file an EEOC discrimination charge against them—they fired her.

26.     The next day, May 25, 2019, Ms. Gordon visited the EEOC Washington Field Office, and filled out and submitted a questionnaire detailing the discrimination and retaliation by Al's Steak House, Jim Breeding, and Dorothy Breeding described above. She subsequently filed a formal EEOC administrative complaint reciting the same allegations.

27.     The EEOC issued Ms. Gordon a right-to-sue notice dated August 18, 2020. She received it on or after August 28, 2020. This suit is filed within 90 days of the date on the face of that letter. Ms. Gordon has thus exhausted her administrative remedies for her Title VII claims.

**Count I:**
*Hostile work environment based on race and national origin*
*in violation of Section 1981*

28.     All prior allegations of this Complaint are hereby incorporated as if set forth in their entirety.

29.     Ms. Gordon belongs to a protected class because she is Black and Jamaican.

30.     Al's is vicariously liable for the actions of Mr. Breeding, Ms. Breeding, and every other Al's employee involved in the events giving rise to this lawsuit, because the employees acted within the scope of their employment.

31.     The defendants engaged in a series of related racially harassing acts, including (but not limited to) calling Ms. Gordon "nigger" multiple times. The harassment culminated in the termination of Ms. Gordon's employment.

32.     By doing so, the defendants created and maintained an environment in which intimidation, ridicule, and insult based on race and national origin were sufficiently severe and sufficiently pervasive to alter the conditions of Ms. Gordon's employment and result in a hostile work environment, in violation of Section 1981.

33.     There is no legitimate, nondiscriminatory reason for any of the discriminatory episodes and concretes acts described in the preceding paragraphs.

34.     The defendants have directly and proximately caused Ms. Gordon substantial economic loss, damage to her career and professional reputation, humiliation, pain, and suffering.

35.     The defendants' actions were wanton, reckless, or in willful indifference to Ms. Gordon's legal rights.

**Count II:**
*Disparate treatment based on race and national origin*
*In violation of Section 1981*

36.     All prior allegations of this Complaint are hereby incorporated as if set forth in their entirety.

37.     The defendants subjected to disparate treatment based on race or national origin, in violation of Section 1981, by subjecting Ms. Gordon to adverse employment actions on account of her race or national origin, including (but not limited to) the termination of her employment.

38.     There is no legitimate, nondiscriminatory reason for any of the adverse employment actions described in the preceding paragraphs.

39.     The defendants have directly and proximately caused Ms. Gordon substantial economic loss, damage to her career and professional reputation, humiliation, pain, and suffering.

40.     The defendants' actions were wanton, reckless, or in willful indifference to Ms. Gordon's legal rights.

### Count III:
*Retaliation for complaining of and opposing unlawful discrimination in violation of Section 1981*

41.     All prior allegations of this Complaint are hereby incorporated as if set forth in their entirety.

42.     Ms. Gordon incorporates every preceding paragraph as alleged above.

43.     Ms. Gordon reasonably and in good faith believed that Mr. Breeding and Ms. Breeding violated Section 1981 by calling her "nigger" repeatedly and defending their decision to do so.

44.     Ms. Gordon engaged in protected Section 1981 activity when she told Mr. and Ms. Breeding that calling her "nigger" repeatedly was racist and when she told them she was going to file an EEOC discrimination charge.

45.     As a result of the protected Section 1981 activity described in the preceding paragraphs, the defendants subjected Ms. Gordon to many materially adverse actions, including (but not limited to) terminating her employment.

46.     There is no legitimate, nonretaliatory reason for any of the materially adverse actions described in the preceding paragraphs.

47.     The defendants have directly and proximately caused Ms. Gordon substantial economic loss, damage to her career and professional reputation, humiliation, pain, and suffering.

48.     The defendants' actions were wanton, reckless, or in willful indifference to Ms. Gordon's legal rights.

### Count IV:
*Hostile work environment based on race and national origin in violation of Title VII*

49.     All prior allegations of this Complaint are hereby incorporated as if set forth in their entirety.

50.     Ms. Gordon incorporates every preceding paragraph as alleged above.

51.     She belongs to a protected class because she is Black and Jamaican.

52.     Al's is an employer and Ms. Gordon is an employee within the meaning of Title VII.

53.     Al's is vicariously liable for the actions of Mr. Breeding, Ms. Breeding, and every other Al's employee involved in the events giving rise to this lawsuit, because the employees acted within the scope of their employment.

54.     Al's engaged in a series of related racially harassing acts, including (but not limited to) calling Ms. Gordon "nigger" multiple times. The harassment culminated in the termination of Ms. Gordon's employment.

55.     By doing so, Al's created and maintained an environment in which intimidation, ridicule, and insult based on race and national origin were sufficiently severe and sufficiently pervasive to alter the conditions of Ms. Gordon's employment and result in a hostile work environment, in violation of Title VII.

56.     There is no legitimate, nondiscriminatory reason for any of the discriminatory episodes and concretes acts described in the preceding paragraphs.

57.     Al's has directly and proximately caused Ms. Gordon substantial economic loss, damage to her career and professional reputation, humiliation, pain, and suffering.

*58.*     Al's actions were wanton, reckless, or in willful indifference to Ms. Gordon's legal rights.

### Count VI:
*Disparate treatment based on race and national origin*
*in violation of Title VII*

59.     All prior allegations of this Complaint are hereby incorporated as if set forth in their entirety.

60.     Al's subjected to disparate treatment based on race or national origin, in violation of Title VII, by subjecting Ms. Gordon to adverse employment actions on account of her race or national origin, including (but not limited to) the termination of her employment.

61.     There is no legitimate, nondiscriminatory reason for any of the adverse employment actions described in the preceding paragraphs.

62.     Al's have directly and proximately caused Ms. Gordon substantial economic loss, damage to her career and professional reputation, humiliation, pain, and suffering.

63.     Al's actions were wanton, reckless, or in willful indifference to Ms. Gordon's legal rights.

**Count VII:**
*Hostile work environment based on race and national origin*
*in violation of Title VII*

64.     All prior allegations of this Complaint are hereby incorporated as if set forth in their entirety.

65.     She belongs to a protected class because she is Black and Jamaican.

66.     Al's is an employer and Ms. Gordon is an employee within the meaning of Title VII.

67.     Al's is vicariously liable for the actions of Mr. Breeding, Ms. Breeding, and every other Al's employee involved in the events giving rise to this lawsuit, because the employees acted within the scope of their employment.

68.     Al's engaged in a series of related racially harassing acts, including (but not limited to) calling Ms. Gordon "nigger" multiple times. The harassment culminated in the termination of Ms. Gordon's employment.

69.     By doing so, Al's created and maintained an environment in which intimidation, ridicule, and insult based on race and national origin were sufficiently severe and sufficiently pervasive to alter the conditions of Ms. Gordon's employment and result in a hostile work environment, in violation of Title VII.

70.     There is no legitimate, nondiscriminatory reason for any of the discriminatory episodes and concretes acts described in the preceding paragraphs.

## Count VIII:
### *Disparate treatment based on religion*
### *in violation of Title VII*

71.     All prior allegations of this Complaint are hereby incorporated as if set forth in their entirety.

72.     Ms. Gordon incorporates every preceding paragraph as alleged above.

73.     Al's subjected Ms. Gordon to disparate treatment based on religion, in violation of Title VII, by subjecting her to adverse employment actions on account of her religion, including (but not limited to) the termination of her employment.

74.     There is no legitimate, nondiscriminatory reason for any of the adverse employment actions described in the preceding paragraphs.

75.     Al's have directly and proximately caused Ms. Gordon substantial economic loss, damage to her career and professional reputation, humiliation, pain, and suffering.

76.     Al's actions were wanton, reckless, or in willful indifference to Ms. Gordon's legal rights.

## Count IX:
### *Hostile work environment based on religion in violation of Title VII*

77.     All prior allegations of this Complaint are hereby incorporated as if set forth in their entirety.

78.     She belongs to a protected class because she is a Hebrew Israelite.

79.     Al's is vicariously liable for the actions of Mr. Breeding, Ms. Breeding, and every other Al's employee involved in the events giving rise to this lawsuit, because the employees acted within the scope of their employment.

80.     Al's engaged in a series of related religious harassing acts, including (but not limited to) saying to her, "This is how we treat Hebrew Israelites in Potomac." The harassment culminated in the termination of Ms. Gordon's employment.

81.     By doing so, Al's created and maintained an environment in which intimidation, ridicule, and insult based on religion were sufficiently severe and sufficiently pervasive to alter the conditions of Ms. Gordon's employment and result in a hostile work environment, in violation of Title VII.

82.     There is no legitimate, nondiscriminatory reason for any of the discriminatory episodes and concretes acts described in the preceding paragraphs.

83.     Al's has directly and proximately caused Ms. Gordon substantial economic loss, damage to her career and professional reputation, humiliation, pain, and suffering.

84.     Al's actions were wanton, reckless, or in willful indifference to Ms. Gordon's legal rights.

## Count X:
### Retaliation in violation of Title VII

85.     All prior allegations of this Complaint are ereby incorporated as if set forth in their entirety.

86.     Ms. Gordon engaged in protected Title VII activity when she told Mr. and Ms. Breeding that calling her "nigger" repeatedly was racist and when she told them she was going to file an EEOC discrimination charge.

87.     As a result of the protected Title VII activity described in the preceding paragraphs, Al's subjected Ms. Gordon to many materially adverse actions, including (but not limited to) terminating her employment.

88.     There is no legitimate, nonretaliatory reason for any of the materially adverse actions described in the preceding paragraphs.

### *Jury Trial Demand*

89.     Ms. Gordon asks for a jury trial on all issues so triable.

### *Prayer for Relief*

90.     Ms. Gordon prays that the Court:

a.   Declare that the defendants' mistreatment of her, as described in this Complaint, violated Title VII;

b.   Order that the defendants refrain from engaging in similar conduct in the future, including the unlawful conduct described in this Complaint;

c.   Order that the defendants take the affirmative action(s) needed to ensure that the effects of their unlawful conduct are eliminated;

d.   Award economic damages, in an amount to be determined at trial;

e.   Award compensatory damages, in an amount to be determined at trial;

f.   Award punitive damages, in an amount to be determined at trial;

g.   Award prejudgment interest;

h.   Award reasonable attorney's fees and costs; and

i.   Award any other relief that the Court considers just, necessary, or proper.

Respectfully submitted,

_____
Stephen B. Pershing
Va. Bar No. 31012
Pershing Law PLLC
1416 E Street, N.E.
Washington, D.C. 20002
(202) 642-1431 (o/m)
steve@pershinglaw.us

Onyebuchim Chinwah, Esq.
(Admission *pro hac vice* pending)
The Chinwah Firm LLC
8403 Colesville Rd., Ste. 1100
Silver Spring, MD 20910
(240) 842-9292
oc@chinwahfirm.com

*Counsel for plaintiff Damali D. Gordon*

Dated:  November 16, 2020