IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

DAMALI D. GORDON,

                    Plaintiff,

v.

EMILY BREEDING, individually
and t/a AL'S STEAK HOUSE;
DOROTHY BREEDING; and
ESTATE OF JAMES BREEDING,

                    Defendants.

No. 1:20-CV-01399-LMB-JFA

Hon. Leonie M. Brinkema

**Jury trial demanded**

## FIRST AMENDED COMPLAINT

### *Introduction*

1.      This civil rights suit under Section 1981 of the Civil Rights Act of 1866, Title VII of the Civil Rights Act of 1964, and Virginia statutory and common law, seeks redress against defendants Emily Breeding (individually and transacting as Al's Steak House), James Breeding (through his estate), and Dorothy Breeding, for intentional discrimination in employment against the plaintiff, Ms. Damali D. Gordon, based on race, ancestry, ethnicity, national origin, and religion; for retaliation because Ms. Gordon challenged that discrimination; and for sexual assault and sexual battery committed against Ms. Gordon by Mr. Breeding. The suit alleges that both Mr. James Breeding, now deceased, and Mrs. Dorothy Breeding subjected Ms. Gordon to unlawful harassment, disparate treatment, and retaliation while she worked as a cashier at Al's Steak House, a restaurant in Alexandria, Virginia, from February 2019 to May 2019, and that Mr. Breeding committed the intentional torts of assault and battery against her.

*Parties*

2.     Plaintiff Damali D. Gordon is a black woman of Jamaican descent. She is a devout member of the Hebrew Israelite faith. She lives in Washington, D.C. When she suffered the wrongs described in this Complaint, she was an employee of Al's Steak House, where she worked as a cashier.

3.     Defendant Emily Breeding is a white woman and the owner and sole proprietor of Al's Steak House, a restaurant located at 1504 Mt. Vernon Avenue, Alexandria, Virginia 22301.

4.     Defendant James Breeding was a white man and a resident of Alexandria, Virginia. At all relevant times, Mr. Breeding was a manager at Al's and was married to Dorothy Breeding. Mr. Breeding had the authority to hire and fire non-managerial employees, including Ms. Gordon. Mr. Breeding is now deceased, and this suit is brought against his estate for acts he committed while living. For convenience, defendant Estate of James Breeding is referred to hereinafter as "James [or Jim or Mr.] Breeding."

5.     Defendant Dorothy Breeding is a white woman and a resident of Alexandria, Virginia. At all relevant times, she was a manager at Al's and was married to Mr. Breeding. She had the authority to hire and fire non-managerial employees, including Ms. Gordon.

*Facts*

6.     Between February 19, 2019, and February 25, 2019, Damali Gordon was in discussions with one or more of the defendants about becoming an employee of Al's Steak House.

7.     On February 19 and 25, 2019, Ms. Gordon received text messages from the mobile telephones of defendants James and Dorothy Breeding asking whether she would be willing to be "paid in cash at first" or "cash at the beginning."

8.      Ms. Gordon's first day at work at Al's Steak House was on or about February 25, 2019.

9.      She was hired as a part-time cashier. Her main job duty was to operate the cash register in order to process payments from restaurant patrons. Sometimes, however, she cleaned the restaurant and cooked in the kitchen.

10.     Ms. Gordon's usual work shift was 3:30 p.m. to 8:30 p.m. on the days she was called in, sometimes on short notice.

11.     At first Ms. Gordon was paid in cash, receiving no pay stubs or other evidence of the payments.

12.     Ms. Gordon is informed and believes that her employer also employed other workers who were paid in cash, *i.e.,* "under the table," and that the defendants did not keep records of wage payments to cash-paid employees.

13.     Because the defendants' payroll records do not include the Al's Steak House employees who were paid in cash, those records substantially understate the true number of their employees. Counting the employees they paid "under the table," the defendants employed more than 15 employees.

14.     Mr. Breeding and Ms. Breeding were Ms. Gordon's supervisors. Both of them supervised Ms. Gordon when she was on the clock. Ms. Breeding alone handled payroll and created the weekly schedule for Ms. Gordon and the other employees.

15.     At first Ms. Gordon's employment at Al's proceeded without incident. She met all legitimate job expectations. She performed her job duties successfully and got along well with her co-workers.

16.     In or about late April 2019, Ms. Gordon was made an on-the-books employee of Al's Steak House. Her first paycheck, drawn by hand on the Al's Steak House checking account and signed by Dorothy Breeding, was dated May 3, 2019.

17.     At or about that time, Mr. Breeding and Ms. Breeding began subjecting Ms. Gordon to racial and religious harassment.

18.     Also at or about that time, Mr. Breeding began comparing Ms. Gordon to white women in a racially offensive way. On several different occasions, while Ms. Gordon was working at the cash register, Mr. Breeding directed her attention to some white women who were entering Al's and told her, "I bet they would do a better job than you."

19.     Around the same time, Ms. Breeding began picking apart virtually everything Ms. Gordon did. For example, on several different occasions, Ms. Breeding criticized Ms. Gordon for using gloves that did not perfectly fit her hands. Tellingly, Ms. Breeding did not criticize any of the white employees in that way.

20.     Ms. Gordon responded to Ms. Breeding's criticism as respectfully as she could. She told Ms. Breeding what glove brand and size would fit her hands properly, and asked that the restaurant purchase them. Ms. Breeding denied that request, instead deliberately buying gloves that were either too big or too small for Ms. Gordon and continuing to criticize her for using ill-fitting gloves.

21.     On May 1, 2019, at 5:34 p.m., Ms. Gordon received a text message from Ms. Breeding's mobile telephone number that said, "Both me and Jim can see you on that camera nigger[.]"

22.     On May 2, 2019, at 6:15 p.m., Ms. Gordon received a text message from Ms. Breeding's mobile telephone number that said, "We own you nigger[.]"

23.     On May 14, 2019, at 4:18 p.m., Ms. Gordon received a text message from Ms. Breeding's mobile telephone number that said, "You nigger bitch I got my eyes on you."

24.     On or about May 13, 2019, Ms. Breeding deliberately changed Ms. Gordon's work schedule in a severely inconvenient way. Less than one hour before Ms. Gordon was to start her 3:30 p.m. to 8:30 p.m. shift, Ms. Breeding cancelled the shift and asked Ms. Gordon to work from 10 a.m. to 3:30 p.m. the next day—even though Ms. Breeding knew that Ms. Gordon was unavailable at that time, at least without more notice, because of her other jobs.

25.     On May 14, 2019, Mr. Breeding ridiculed Ms. Gordon's religion.  That day Mr. Breeding discussed Ms. Gordon's Hebrew Israelite faith and her Jamaican origin with a friend, a white man, who visited Al's. Most of their conversation took place within a few feet of the cash register, where Ms. Gordon was working. After asking her a series of intrusive questions about her Jamaican origin and her Hebrew Israelite faith, Mr. Breeding and his friend told her, "This is how we treat Hebrew Israelites in Potomac." Then they smirked.

26.     That same day, while Ms. Gordon was cleaning near Mr. Breeding, he remarked to Ms. Breeding about Ms. Gordon: "Where did you find this nigger? She can really clean. But we won't let her outdo the lady who cleans at night."

27.     Later that day, while Ms. Gordon was stacking pizza boxes near the oven, Mr. Breeding leered at Ms. Gordon and said to Ms. Breeding, "I can't believe you hired this nigger."

28.     Being called "nigger" over and over again by both Mr. Breeding and Ms. Breeding made Ms. Gordon feel inexpressibly degraded and humiliated.

29.     Still, Ms. Gordon stood up for herself and told Mr. Breeding and Ms. Breeding that they were being racist to her.

30.     They responded by telling Ms. Gordon she was wrong.  In so doing, they effectively condoned their own blatantly racist remarks, and caused Ms. Gordon to feel even more humiliated, degraded, and helpless because neither Jim Breeding nor Dorothy Breeding did anything to address their own racial harassment.

31.     From around April 2019 to around May 2019, Mr. Breeding also made unwelcome sexual advances to Ms. Gordon. For example, whenever Mr. Breeding saw Ms. Gordon bend to clean a mess on the restaurant floor or pick up something from the floor, he asked her, insincerely, if he could "touch [her] butt." Mr. Breeding did this several times.

32.     Even worse, on at least two occasions between late April and mid-May 2019, Mr. Breeding groped Ms. Gordon's buttocks.  On one of these occasions Mr. Breeding was in a wheelchair; on another, he was not.

33.     Mr. Breeding's forced intrusion on Ms. Gordon's person—without her consent—shocked Ms. Gordon and made her feel degraded, humiliated, and regarded as trash.

34.     On at least one occasion between late April and mid-May 2019, Mr. Breeding or another of Al's white male employees derisively interjected—upon hearing Ms. Gordon say she was considering *in vitro* fertilization ("IVF") to have a child—that they knew of men who would impregnate her without charge, in fact would pay her for so doing. The obvious implication of these derogatory comments was that they regarded her as little or no better than a prostitute.

35.     By the middle of May 2019, Ms. Gordon found the sexual harassment, the racial hostility and ridicule, and the religious ridicule from Mr. and Ms. Breeding intolerable. She dreaded going to work because she was tired of being humiliated and degraded by her superiors simply because she is a black, Jamaican, Hebrew Israelite woman.

36.     Ms. Gordon confided in her husband Bobby Curtis Brown, Jr., her friend Jasmine Coleman, and her friend Chanel Brown about the sexual harassment, racial harassment, and religious ridicule directed at her by Mr. and Ms. Breeding. One of Ms. Gordon's confidants told her to report Mr. Breeding's and Ms. Breeding's mistreatment of her to the EEOC.

37.     As a result, on or about May 14, 2019, Ms. Gordon told Mr. and Ms. Breeding that she intended to file an EEOC complaint against them.

38.     On or about May 24, 2019—less than two weeks after telling Mr. Breeding and Ms. Breeding about her intention to file an EEOC discrimination charge against them—the defendants fired her.

39.     The next day, May 25, 2019, Ms. Gordon submitted an EEOC questionnaire to the EEOC Washington Field Office. The questionnaire detailed the unlawful discrimination and retaliation by Al's Steak House, Mr. Breeding, and Ms. Breeding described above.

40.     Ms. Gordon subsequently filed a formal EEOC administrative complaint reciting the same allegations.

41.     The EEOC issued Ms. Gordon a right-to-sue notice dated August 18, 2020. She received it on or after August 28, 2020. This suit was filed within 90 days of the date on the face of that letter. Ms. Gordon has thus exhausted the administrative remedies required for her Title VII claims.

**Count I:**
*Hostile work environment based on race, ancestry, and ethnicity*
*in violation of Section 1981*

42.     All prior allegations of this First Amended Complaint are hereby incorporated as if set forth in their entirety.

43.     Ms. Gordon is protected by 42 U.S.C. § 1981 from a hostile work environment on account of her race, ancestry, or ethnicity as black and Jamaican.

44.     The defendants engaged in a pattern of racial hostility and harassment directed against Ms. Gordon, including (but not limited to) calling Ms. Gordon "nigger" multiple times, both verbally and in writing. The harassment culminated in the termination of Ms. Gordon's employment.

45.     The defendants' pattern of racial hostility against and harassment of Ms. Gordon included the sexual mistreatment described in this Complaint, which degraded and humiliated Ms. Gordon—a black woman—in the manner in which white men have degraded and humiliated black women in the United States for centuries, regarding them either as chattel or, at a minimum, as less entitled to human dignity and sexual agency than non-black women.

46.     By so harassing Ms. Gordon, the defendants created and maintained an environment in which intimidation, ridicule, and insult based on race, ancestry, and ethnicity were sufficiently severe and sufficiently pervasive to alter the conditions of Ms. Gordon's employment and result in a hostile work environment, in violation of Section 1981.

47.     Al's is vicariously liable for the actions of Mr. Breeding, Ms. Breeding, and every other Al's employee involved in the events giving rise to this Count, because the employees acted within the scope of their employment.

48.     There is no legitimate, non-discriminatory reason for the pattern of discriminatory and harassing behavior described in the preceding paragraphs.

49.     In acting as described in this Count, the defendants have directly and proximately caused Ms. Gordon substantial economic loss, damage to her career and professional reputation, humiliation, pain, and suffering.

50.     The defendants' actions as described in this Count were wanton, reckless, and/or in willful indifference to Ms. Gordon's legal rights.

## Count II:
### *Disparate treatment based on race, ancestry, and ethnicity in violation of Section 1981*

51.     All prior allegations of this First Amended Complaint are hereby incorporated as if set forth in their entirety.

52.     The defendants engaged in disparate treatment of Ms. Gordon based on race, ancestry, and ethnicity, in violation of Section 1981, by subjecting her to adverse employment actions on account of her race, ancestry, and ethnicity, including (but not limited to) the termination of her employment.

53.     Al's is vicariously liable for the actions of Mr. Breeding, Ms. Breeding, and every other Al's employee involved in the events giving rise to this Count, because the employees acted within the scope of their employment.

54.     There is no legitimate, non-discriminatory reason for any of the adverse employment actions described in the preceding paragraphs.

55.     The defendants' actions as described in this Count have directly and proximately caused Ms. Gordon substantial economic loss, damage to her career and professional reputation, humiliation, pain, and suffering.

56.     The defendants' actions as described in this Count were wanton, reckless, and/or in willful indifference to Ms. Gordon's legal rights.

## Count III:
### *Retaliation for complaining of and opposing unlawful discrimination in violation of Section 1981*

57.     All prior allegations of this First Amended Complaint are hereby incorporated as if set forth in their entirety.

58.     Ms. Gordon reasonably and in good faith believed that Mr. Breeding and Ms. Breeding were violating Section 1981 by, among other things, calling her "nigger" repeatedly and defending their racist behavior.

59.     Ms. Gordon engaged in protected Section 1981 activity when, among other things, she told Mr. and Ms. Breeding that calling her "nigger" repeatedly was racist and when she told them she was going to file an EEOC discrimination charge.

60.     In reaction to the protected Section 1981 activity described in the preceding paragraphs, the defendants subjected Ms. Gordon to materially adverse actions, including (but not limited to) termination of her employment.

61.     Al's is vicariously liable for the actions of Mr. Breeding, Ms. Breeding, and every other Al's employee involved in the events giving rise to this Count, because the employees acted within the scope of their employment.

62.     There is no legitimate, non-retaliatory reason for any of the materially adverse actions described in the preceding paragraphs.

63.     The defendants' retaliatory actions have directly and proximately caused Ms. Gordon substantial economic loss, damage to her career and professional reputation, humiliation, pain, and suffering.

64.     The defendants' actions as described in this Count were wanton, reckless, and/or in willful indifference to Ms. Gordon's legal rights.

**Count IV:**
*Hostile work environment based on race and national origin*
*in violation of Title VII*

65.     All prior allegations of this First Amended Complaint are hereby incorporated as if set forth in their entirety.

66.     Ms. Gordon is protected by Title VII from a hostile work environment based on her race and national origin as black and Jamaican.

67.     Al's is an employer and Ms. Gordon is an employee within the meaning of Title VII.

68.     Al's is vicariously liable for the actions of Mr. Breeding, Ms. Breeding, and every other Al's employee involved in the events giving rise to this Count, because the employees acted within the scope of their employment.

69.     Al's engaged in a series of related racially harassing acts, including (but not limited to) calling Ms. Gordon "nigger" multiple times. The harassment culminated in the termination of Ms. Gordon's employment.

70.     The defendants' pattern of racial hostility against and harassment of Ms. Gordon included the sexual mistreatment described in this Complaint, which degraded and humiliated Ms. Gordon—a black woman—in the manner in which white men have degraded and humiliated black women in the United States for centuries, regarding them either as chattel or, at a minimum, as less entitled to human dignity and sexual agency than non-black women.

71.     Al's created and maintained an environment in which intimidation, ridicule, and insult based on race and national origin directed at Ms. Gordon were sufficiently severe and sufficiently pervasive to alter the conditions of her employment and result in a hostile work environment, in violation of Title VII.

72.     There is no legitimate, non-discriminatory reason for the pattern of racial hostility against Ms. Gordon, or for any of the discriminatory actions against her, described in the preceding paragraphs.

73. By committing the wrongs described herein, Al's has directly and proximately caused Ms. Gordon substantial economic loss, damage to her career and professional reputation, humiliation, pain, and suffering.

74. The actions of Al's as described in this Count were wanton, reckless, and/or in willful indifference to Ms. Gordon's legal rights.

### Count V:
### *Disparate treatment based on race and national origin in violation of Title VII*

75. All prior allegations of this First Amended Complaint are hereby incorporated as if set forth in their entirety.

76. Al's engaged in disparate treatment based on race and national origin, in violation of Title VII, by subjecting Ms. Gordon to adverse employment actions on account of her race and national origin, including (but not limited to) the termination of her employment.

77. There is no legitimate, non-discriminatory reason for any of the adverse employment actions described in the preceding paragraphs.

78. In committing the wrongs described in this Count, Al's has directly and proximately caused Ms. Gordon substantial economic loss, damage to her career and professional reputation, humiliation, pain, and suffering.

79. Al's actions were wanton, reckless, and/or in willful indifference to Ms. Gordon's legal rights.

### Count VI:
### *Retaliation in violation of Title VII*

80. All prior allegations of this First Amended Complaint are hereby incorporated as if set forth in their entirety.

81.     Ms. Gordon engaged in protected Title VII activity when, among other things, she told Mr. and Ms. Breeding that calling her "nigger" repeatedly was racist and when she told them she was going to file an EEOC discrimination charge.

82.     In reaction to the protected Title VII activity described in the preceding paragraphs, Al's subjected Ms. Gordon to materially adverse actions, including (but not limited to) terminating her employment.

83.     There is no legitimate, non-retaliatory reason for any of the materially adverse actions described in the preceding paragraphs.

84.     The defendants' actions as described in this Count have directly and proximately caused Ms. Gordon substantial economic loss, damage to her career and professional reputation, humiliation, pain, and suffering.

85.     The actions of Al's complained of herein were wanton, reckless, and/or in willful indifference to Ms. Gordon's legal rights.

**Count VII:**
*Sexual harassment/hostile work environment*
*in violation of Title VII*

86.     All prior allegations of this First Amended Complaint are hereby incorporated as if set forth in their entirety.

87.     Ms. Gordon is protected by Title VII against sexual harassment and a hostile work environment based on her sex.

88.     Each time Mr. Breeding assaulted Ms. Gordon, including when he groped her buttocks, and on the numerous occasions when he derided her by asking or threatening to "touch [her] butt," Mr. Breeding intended to demean Ms. Gordon and cause her sexual humiliation and degradation.

89.     The acts by Mr. Breeding alleged above were unwelcome, and Mr. Breeding knew or reasonably should have known that they were unwelcome.

90.      When Mr. Breeding committed the acts of sexual harassment alleged herein, he was acting within the scope of his employment at Al's Steak House. As Mr. Breeding's employer, Al's is therefore vicariously liable for his actions, and for the injuries they caused Ms. Gordon, under the doctrine of *respondeat superior*.

91.     By doing nothing to stop, mitigate, prevent or redress Mr. Breeding's actions, although it had reasonable notice of them, Al's violated Ms. Gordon's Title VII protections against sexual harassment and a hostile work environment based on sex independently of its *respondeat superior* liability alleged in the preceding paragraph.

92.     There is no legitimate, non-discriminatory reason for any of the discriminatory episodes and concrete acts described in the preceding paragraphs.

93.     The defendants' actions as described in this Count have directly and proximately caused Ms. Gordon substantial economic loss, damage to her career and professional reputation, humiliation, pain, and suffering.

94.     The actions of Al's complained of herein were wanton, reckless, and/or in willful indifference to Ms. Gordon's legal rights.

### Count VIII:
### *Disparate treatment based on religion*
### *in violation of Title VII*

95.     All prior allegations of this First Amended Complaint are hereby incorporated as if set forth in their entirety.

96.     Ms. Gordon is protected by Title VII against disparate treatment based on her religion as a Hebrew Israelite.

97.     Al's subjected Ms. Gordon to disparate treatment based on religion, in violation of Title VII, by subjecting her to adverse employment actions on account of her religion, including (but not limited to) the termination of her employment.

98.     There is no legitimate, non-discriminatory reason for any of the adverse employment actions described in the preceding paragraphs.

99.     By committing the wrongs that gave rise to this Count, Al's has directly and proximately caused Ms. Gordon substantial economic loss, damage to her career and professional reputation, humiliation, pain, and suffering.

100.    Al's actions as described in this Count were wanton, reckless, and/or in willful indifference to Ms. Gordon's legal rights.

### Count IX:
### *Sexual assault*
### *in violation of Virginia statutory and common law*

101.    All prior allegations of this First Amended Complaint are hereby incorporated as if set forth in their entirety.

102.    Va. Code § 65.2-301(B) authorizes a victim of sexual assault in the workplace to bring a claim for damages against the assailant, including an assailant who is a co-worker of the victim.

103.    When Mr. Breeding assaulted Ms. Gordon on multiple occasions, including when he groped her buttocks (an act which was sexual in nature and which constituted sexual abuse), Mr. Breeding intended each time to cause Ms. Gordon apprehension of imminent harmful and offensive contact with her person. In so doing, Mr. Breeding committed conduct that met the definition of sexual assault in Va. Code § 18.2-67.4 and § 18.2-67.10, and therefore entitled Ms. Gordon to the civil protections of Va. Code § 65.2-301(B).

104.    As a result of Mr. Breeding's acts, Ms. Gordon was in fact placed in great apprehension of imminent harmful and offensive contact with her person.

105.    At no time did Ms. Gordon consent to any of the acts by Mr. Breeding alleged above.

106.    Mr. Breeding's conduct as described above caused Ms. Gordon to be apprehensive that Mr. Breeding would subject her to further intentional invasions of her right to be free from offensive and harmful contact, including sexual abuse, and demonstrated that at all times material herein, Mr. Breeding had a present ability to subject her to an intentional offensive and harmful touching.

107.    The facts alleged in this Count satisfy the criteria for, and therefore constitute, an assault under Virginia common law.

108.    Mr. Breeding was acting within the scope of his employment at Al's when he assaulted Ms. Gordon. Al's Steak House, as Mr. Breeding's employer, is therefore vicariously liable for his actions and for the injuries Ms. Gordon sustained under the doctrine of *respondeat superior*.

109.    As a direct and proximate result of Mr. Breeding's unlawful conduct and sexual abuse as alleged above, Ms. Gordon suffered and continues to suffer physical injury, humiliation, embarrassment, emotional distress and anxiety, and economic harm.

110.    The aforementioned conduct by Mr. Breeding was willful, wanton, and malicious and entitles Ms. Gordon to punitive damages.

### Count X:
### *Sexual battery*
### *in violation of Virginia statutory and common law*

111.    All prior allegations of this First Amended Complaint are hereby incorporated as if set forth in their entirety.

112.     Va. Code § 65.2-301(B) authorizes a victim of sexual assault in the workplace to bring a claim of damages against the assailant, including an assailant who is a co-worker of the victim.

113.     Mr. Breeding groped Ms. Gordon's buttocks, a sexual battery within the meaning of Va. Code § 18.2-67.4 and § 18.2-67.10, and therefore entitled Ms. Gordon to the civil protections of Va. Code § 65.2-301(B).

114.     In committing each act of sexual battery described herein, Mr. Breeding intended to subject Ms. Gordon to an unwanted, offensive touching.

115.     As a result of Mr. Breeding's acts, Ms. Gordon was subjected to unwanted, offensive touching.

116.     At no time did Ms. Gordon consent to any of the acts by Mr. Breeding alleged above.

117.     Mr. Breeding's conduct as described above caused Ms. Gordon to be apprehensive that Mr. Breeding would subject her to further intentional invasions of her right to be free from offensive and harmful contact, including sexual abuse, and demonstrated that at all times material herein, Mr. Breeding had a present ability to subject her to an intentional offensive and harmful touching.

118.     As a direct and proximate result of Mr. Breeding's unlawful conduct and sexual abuse as alleged above, Ms. Gordon has suffered physical injury, severe emotional distress, humiliation, embarrassment, mental and emotional distress and anxiety, and economic harm.

119.     The facts alleged in this Count satisfy the criteria for, and therefore constitute, actionable sexual assault and sexual battery under Virginia common law as well as actionable sexual assault and sexual battery under Va. Code § 65.2-301(B).

120.     When Mr. Breeding battered Ms. Gordon, he was acting within the scope of his employment. Therefore, Al's Steak House, as Mr. Breeding's employer, is vicariously liable for his actions, and for the injuries Ms. Gordon sustained, under the doctrine of *respondeat superior*.

121.     The aforementioned conduct by Mr. Breeding was willful, wanton, and malicious and entitles Ms. Gordon to punitive damages.

### Jury Trial Demand

122.     Ms. Gordon asks for a jury trial on all issues so triable.

### Prayer for Relief

123.     Ms. Gordon respectfully requests the following relief:

   a.   A declaratory judgment under 28 U.S.C. § 2201(a) that the defendants' mistreatment of her, as described in this Complaint, violated Section 1981, Title VII, and Virginia statutory and common law;

   b.   An order that the defendants refrain from engaging in similar conduct in the future, including the unlawful conduct described in this Complaint;

   c.   An order that the defendants take the affirmative action(s) needed to ensure that the effects of their unlawful conduct are eliminated;

   d.   An award of economic damages, in an amount to be determined at trial;

   e.   An award of compensatory damages, in an amount to be determined at trial;

   f.   An award of punitive damages, in an amount to be determined at trial;

   g.   An award of pre-judgment interest;

   h.   An award of reasonable attorney's fees and costs; and

   i.   Any other relief that the Court considers just, necessary, or proper.

Respectfully submitted,

_____

Stephen B. Pershing
Va. Bar No. 31012
Pershing Law PLLC
1416 E Street, N.E.
Washington, D.C. 20002
(202) 642-1431 (o/m)
steve@pershinglaw.us

Onyebuchim Chinwah, Esq.
(Admission *pro hac vice* pending)
The Chinwah Firm LLC
8403 Colesville Rd., Ste. 1100
Silver Spring, MD 20910
(240) 842-9292
oc@chinwahfirm.com

*Counsel for plaintiff Damali D. Gordon*

Dated:  March 10, 2021

^     ^     ^

## CERTIFICATE OF SERVICE

I certify that on the 11th day of March, 2021, the date of the Court's order granting leave to file the foregoing First Amended Complaint, I caused this document, identical to ECF No. 11-2 except for this certificate of service, to be filed with the Court's ECF system, through which it was or will be transmitted to all counsel of record.

_____

Stephen B. Pershing

19